HERMAN v. YOUNGSTOWN CAR MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1911.)

No. 2,130.

1. PATENTS (§ 27*)—ADAPTATION FROM ANOTHER ART.

Whether or not the transfer of a device from one art to another, and its adaptation to use therein, involves patentable invention, is essentially a question of fact.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. § 27.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—APPARATUS FOR MAKING BLUE PRINTS.

The Herman patent, No. 777,096, for an apparatus for making blue prints, claims 12 and 13 were not anticipated, and disclose patentable invention in the hydraulic cylinder for regulating the lowering of the lamp into the printing cylinder. Such claims also *held* infringed by the device of the Wagenhorst patent, No. 765,406.

3. PATENTS (§ 177*)—CONSTRUCTION OF CLAIMS—SUFFICIENCY OF DESCRIPTION.

A claim of a patent which specifies as one of the elements of a combination a hollow piston rod is not invalid because it does not mention a piston, which is necessarily implied. Typographical errors may be disregarded.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 177.*]

4. PATENTS (§ 26*)—VALIDITY OF CLAIMS—COMBINATIONS.

A claim of a patent made up by adding to the combination of another claim an element not the invention of the patentee is not therefore invalid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

5. PATENTS (§ 172*)—INFRINGEMENT—EVIDENCE—GRANT OF LATER PATENT.

A patent is not the grant of a right to make or use or sell, nor is any such right implied directly or indirectly, but is a grant only of the right to exclude others; hence the grant of a later patent is evidence only that a patentable difference exists between the device shown and that of a

---

prior patent, and not that it does not infringe the earlier patent unless the latter has been construed as specific and not generic as to the later structure.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 247; Dec. Dig. § 172.*

For other definitions, see Words and Phrases, vol. 6, pp. 5228–5231; vol. 8, p. 7748.]

6. PATENTS (§ 312*)—INFRINGEMENT—EVIDENCE—ACTION OF PATENT OFFICE.
The failure of the Patent Office to declare an interference between co-pending applications is of little if any evidential force on the question whether the device of one is an infringement of the other.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.*]

7. PATENTS (§ 26*)—INVENTION—COMBINATIONS.
Assembling of old elements in one structure is not invention, unless they thereby acquire a new combination function. Claims 16 and 17 of patent No. 777,096 held invalid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

8. PATENTS (§ 167*)—VALIDITY OF CLAIMS—FEATURE NOT DESCRIBED.
A claim of a patent depending for its validity upon a feature not disclosed by specification or drawing is invalid. So held of claim 18, patent No. 777,096.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

9. PATENTS (§ 328*)—INVENTION—APPARATUS FOR MAKING BLUE PRINTS.
The Herman patent, No. 721,041, for an apparatus for making blue prints, claims 32 and 33, held void for lack of patentable invention.

10. PATENTS (§ 328*)—INFRINGEMENT—APPARATUS FOR MAKING BLUE PRINTS.
The Herman patent, No. 743,160, for an apparatus for making blue prints, claim 7, held not infringed.

11. PATENTS (§ 151*)—SUIT FOR INFRINGEMENT—EFFECT OF INVALID CLAIMS—DISCLAIMER.
Where some of the claims of a patent are held invalid in an infringement suit, the complainant must file a disclaimer as to such claims before being entitled to a decree for infringement of others.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 151.*]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity by Reinhold Herman against the Youngstown Car Manufacturing Company. Decree for defendant and complainant appeals. Reversed in part.

T. A. Connolly and J. B. Connolly (Connolly Bros., on the brief), for appellant.

C. E. Brock (Elwood O. Wagenhorst, on the brief), for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. In the court below, Herman brought an infringement suit based upon three patents issued to him, being, respectively, No. 721,041, dated February 17, 1903, No. 743,160, dated November 3, 1903, and No. 777,096, dated December 13, 1904; and all having reference to apparatus for making blue prints. The last-named patent, No. 777,096, was issued upon the application of

earliest filing date, and contains the broadest claims. The Youngstown Company, the defendant, presented, by answer, the usual issues of validity and infringement. The court below dismissed the bill, on final hearing, on the merits, and complainant appealed.

The structures involved, both complainant's and defendant's, consist essentially of a frame, carrying an open-ended, vertical cylinder which has transparent sides surrounded by opaque wrappings. The negatives or tracings are placed in contact with the outside of the glass cylinder. The sensitized paper is placed next, and the wrappings are then applied so as to hold the tracings and the paper firmly in position. Then an electric light, suspended from the frame and hanging over the cylinder, is automatically lowered into the cylinder, resulting in printing the image upon the paper. After a predetermined time, the electric current is automatically cut out, thus ending the exposure, the lamp is manually raised from the cylinder, and the wrappings and prints are removed. This type of apparatus has proved very effective, and has, for all large uses, superseded the old plan of sun exposure in flat printing frames.

The first apparatus of this type is found in the German patent to Kratzenstein, published in 1890. He had the vertical glass cylinder and the hanging light to be lowered into it. The operation of raising and lowering was manual, and the illustrated lamp was not electric. British patent No. 569, of 1896, to Hall, described, in the provisional specification, an apparatus of this character in combination with an arc lamp to be passed inside of the cylinder for its entire length, with regulated motion controlled by a clock-work escapement; and by the complete specification and drawings it elaborated this idea, showing a pendulum and escapement permitting an electric light gradually to descend within the glass cylinder. Pullman, by United States application antedating, in its filing, Herman's application, showed a complete and elaborate apparatus of the Hall type, using the same pendulum and escapement movement, but containing an automatic cut-out for the light.

Herman's claimed broad invention and to which claims 12 and 13 (hereafter quoted) of patent 777,096 are directed, consisted in combining, with the glass cylinder and the vertically moving lamp, a hydraulic cylinder, for the purpose of controlling the downward motion of the light. To this end, he employed a closed, vertical cylindrical case containing a liquid, and having a moving piston carried on a hollow piston rod. Through the piston were comparatively large ports, closed on the upper side by ordinary flap valves. In the side of the hollow rod and above the piston was a comparatively small opening, the size of which could be regulated by a sliding valve filling the interior of the hollow rod, and operated longitudinally by a stem passing out through a threaded engagement at the upper end of the rod, and turned by an attached thumb nut or wheel. This piston could be lowered rapidly, the liquid passing easily and swiftly from the lower to the upper side of the piston. The same power would raise it slowly, because the passage of the liquid from the upper to the lower side of the piston must be through the small opening into the hollow

rod; and obviously this speed could be regulated by the valve stem so as to vary the motion from its highest limit down to nothing. This hydraulic cylinder was attached to the frame, and the lamp-suspending cord was carried over a pulley to the upper end of the piston rod. The time of desired exposure being known, the valve in the hollow rod could be so adjusted that the downward movement of the lamp would occupy exactly this amount of time.

[1] No anticipation of these claims, 12 and 13, is alleged, but it is said that there was no invention in substituting for the escapement of the Hall apparatus the hydraulic cylinder which was well known in other combinations for accomplishing analogous results; and, as the most analogous existing uses, we are pointed to resistance cylinders in a door check, in a hydraulic elevator, and in a block-signal operating device. These three instances undoubtedly show generally similar hydraulic cylinders, and the structure of the door check is closely similar; so that, in order to find any substantial validity in these claims, we must determine whether invention was involved in such adaptation as Herman made. Such a question is essentially one of fact, and, in its solution, we get little help from the decided cases. They lay down general rules which are familiar, but the application of these rules to specific facts depends upon the force which those facts carry to those who determine the issue. It is sufficient to call attention to three of the more recent decisions of this court upon the subject, and to the cases there cited. National Tube Co. v. Aiken, 163 Fed. 254, 258–263, 91 C. C. A. 114; Electric, etc., Co. v. Westinghouse, etc., Co., 171 Fed. 83, 92, 96 C. C. A. 187; Morgan, etc., Co. v. Alliance, etc., 176 Fed. 100, 108, 109, 100 C. C. A. 30.

The problem was to interpose against the weight of the falling lamp a resistance which should insure a steady, uniform motion of the lamp, at the same speed in all its parts, and with a smoothness which should not interfere with the perfection of the light, and with an environment such that the speed and length of exposure could be determined in advance, and could then be automatically regulated, and such that the electric current could be applied and controlled. In the door check the resulting control of the motion is uneven. The leverage, and, therefore, the power, vary in different parts of the swing; the apparatus is rough; approximate results are sufficient; and there is little delicacy in operation. The only substantial function is to check. The elevator involves a large structure and the manipulation of great power. Its motion is not steady, but varying. Its weight, and so the required resistance, vary constantly with its load. An elevator, which must move smoothly and automatically from top to bottom of the shaft without stop, would be useless. The railroad block-signal device does, it is true, provide for a continuous, regular, even motion, but the mechanism and the operation are rough, not delicate. The railroad signal post and the photo printing frame are in fields far away from each other. Considering these things, the chief difficulty which we have in finding invention results from the statements in Hall's complete specification in his patent of 1896 that:

"The lamp may be lowered into the cylinder E by hand, or a dash-pot, clock-work or other escapement, or any other suitable mechanical means may be adopted for controlling and regulating the motion of the lamp into the cylinder and for passing it from top to bottom thereof by gradual and continuous motion."

The hydraulic cylinder of Herman is said to be a dash-pot, and, if so, the above extract tends to show that the substitution of cylinder for clock-work would occur to one skilled in the art. However, the hydraulic cylinder, as adapted by Herman, is much more than a mere dash-pot. This reference is, at the best, only a suggestion. Hall did not show any such construction in this patent, and the next year, in a succeeding patent, he abandoned even the idea. As a suggestion, it is a "long shot." (Judge, now Mr. Justice, Lurton, 163 Fed. at page 258, 91 C. C. A. 114.) Abel in 1898, and Shaw in 1899, obtained British patents upon this type of apparatus, and did not use a hydraulic cylinder or anything else that could be called a dash-pot. Fullman, also, in 1901, adhered to the clock-work, and Schildhauer in 1901 used an electric motor. The problems of construction involved in the application of the dash-pot idea might have seemed, to those who observed Hall's suggestion, to make it impracticable. Certainly no one adopted it, and Hall's abandonment of it in his next patent indicates that he did not regard it as important, and goes far to neutralize his first reference. Considering the vagueness of this suggestion, the modifications, and adjustments required for its application to this art, the fact that no one else in the intervening years attempted to make such application, the very considerable utility it appears to have and the burden resting on defendant to establish invalidity, we conclude that Herman is entitled to credit for more than skill, and that an invention existed.

[2, 3] The twelfth claim reads as follows:

"12. In a printing apparatus, the combination of a printing cylinder suitably mounted, an electric lamp, electrical connections with said lamp, a liquid cylinder, a hollow piston rod operating in said liquid cylinder, and means whereby the hollow piston rod is automatically raised by the counterbalance-weight of the lamp, substantially as described."

This claim embodies the essential parts of the combination we have been discussing. It is criticised as a basis for an infringement decree, in two respects: (1) The printing cylinder of the patent is mounted on horizontal trunnions so that the cylinder may be tilted from a vertical to a horizontal position. No other mounting is referred to in the specification, and it is said that the words "suitably mounted" import into the claim a necessity for this substantial construction; while defendant's cylinder is carried upon a vertical axial standard upon which the cylinder rotates without tilting. We see no reason for confining the permissible "suitable mounting" to the form shown in the specification. The mounting has nothing to do with the essential invention of the claim, except to provide an operative environment, and the defendant's mounting accomplishes the same result. Either one is "suitable." (2) One of the elements of the claim is "a hollow piston rod operating," etc., but no piston is mentioned; so the claim is said to be for an inoperative combination. We think

this is hypercritical. A rod is not a piston rod, unless it carries a piston, and it could not be said to be "operating" nor to employ "means for automatically raising," unless there was a piston. This element is necessarily implied.

With this construction of the claim infringement is not denied, save for the suggestions that defendant's hydraulic cylinder is mounted other end up, so that the advancing piston rod lowering the lamp falls, instead of rises, and that defendant has no hollow piston rod, because only the lower portion is hollow. These differences are immaterial. The substituted forms would be equivalents, within even a narrower definition than is appropriate to this case.

Claim 13 is as follows:

"13. In a printing apparatus, a suitably mounted printing cylinder, an electric lamp, connections to said lamp, an independent connection with the lamp, a suitably supported liquid cylinder, a hollow piston rod in the cylinder and provided with ports communicating with said cylinder, a piston in said hollow piston rod, a flap-valve carried by said piston, and connections between the independent connection of the lamp and cylinder, substantially as described."

[4] This claim is criticised, because it calls for a "piston in said hollow piston rod," while there is no such part in fact. We think this an obvious typographical error for "a piston on said hollow piston rod," and that the claim should be treated as if the correction was made. Aside from immaterial differences, as to nomenclature, and including necessary implications, this claim differs from claim 12 only by adding a reference to the device for cutting out the electric current automatically by the action of the liquid cylinder. This idea was held by the Patent Office, as between Herman and Fullman, to be the invention of Fullman, and has been held by the Circuit Court of Appeals of the Third Circuit, not to involve invention. Elliott v. Youngstown, etc., Co., 181 Fed. 345, 104 C. C. A. 175. However, its addition as an element of claim 13 does not make such claim improper or invalid; it being the formulation of a combination specific with reference to claim 12. Infringement of this claim is clear.

[5] Defendant's device is manufactured under patent No. 765,406, issued July 19, 1904, to J. H. Wagenhorst, and the court below gave to this fact some force in reaching his conclusion that the device did not infringe. We think that the granting of the later patent and defendant's conformity thereto are not of importance in this case on the infringement issue. There are expressions in some reported cases implying that by the later patent the government has granted a right to make and use the article so patented, and that such grant is inconsistent with any construction of the earlier patent which would forbid the manufacture of the later structure. Such implication rests on a fundamental error. A patent is not the grant of a right to make or use or sell. It does not, directly or indirectly, imply any such right. It grants only the right to exclude others. The supposition that a right to make is created by the patent grant is obviously inconsistent with the established distinctions between generic and specific patents, and with the well-known fact that a very considerable portion of the patents granted are in a field covered by a former relatively generic

or basic patent, are tributary to such earlier patent, and cannot be practiced unless by license thereunder.

Another reason sometimes advanced for supposing that the structure of the second does not infringe the claim of the first patent is that the Patent Office has declared that a patentable difference exists. The premise is sound, but not the conclusion. In examining the second application, the Patent Office has no concern with the scope of the claim of the first, and does not and must not pay any attention thereto. It is concerned only with the early disclosure by the specification and drawings. Patentable difference does not of itself tend to negative infringement. It may just as well be based upon infringement, plus improvement; and improvement may lie in addition, simplification, or variance. This is well illustrated by this Wagenhorst patent. The drawings show, and the specifications describe, a structure generally similar to Herman's, but each one of the 10 claims is found to be confined to some modification and supposed improvement added to the underlying combinations of the earlier art.

As the necessary result of the fundamental principles, it seems that the existence of the later patent can have no tendency to disprove infringement, unless, for other reasons, we have first reached the conclusion that the earlier patent is, as to the later structure, specific, and not generic. If we have reached that conclusion and the correlative conclusion that the earlier patent is entitled only to a narrow range of equivalents, and if we find that the claims of the later patent embody no improvement feature whatever, we will then find our conclusion fortified by the Patent Office declaration that the two structures are different species of the same genus; but, before we can so interpret the Patent Office action, we must have given to the earlier patent a construction which will of itself probably determine the question of infringement, and it is difficult to see how in deciding the underlying question material aid can be had from such Patent Office declaration.

We find no authoritative decisions which go beyond the limits we have indicated. Corning v. Burden, 15 How. 252, 270, 14 L. Ed. 683, seems to be the basis of the later rulings. Its language is general. The report does not show the two patents fully enough to indicate any inconsistency with the ideas we have formulated; and the opinion antedates the Patent Office practice in force while all now existing patents were issued. Blanchard v. Putnam, 8 Wall. 420, 425, 19 L. Ed. 433, also in general language and with reference to peculiar facts, tends to limit, if not overrule, Corning v. Burden. The remark of Mr. Justice Jackson in Miller v. Eagle Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121, refers to patentable difference, not to noninfringement, and the case to which he refers (Duff v. Sterling, 107 U. S. 636, 2 Sup. Ct. 487, 27 L. Ed. 517) did not involve the evidential force of the junior patent. In Boyd v. Janesville, etc., Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973, the court reaches the conclusion that the Boyd patent is specific, and then, in referring to defendant's patent, considers the structural differences which put the two patents in two specific classes. The sentence quoted with ap-

parent approval from Pavement Co. v. City of Elizabeth, 4 Fish. 189, Fed. Cas. No. 312, was appropriate to that case, but, if applied generally, would overlook the distinction between patentable difference and noninfringement. The opinions of the Supreme Court in Kokomo, etc., Co. v. Kitselman, 189 U. S. 8, 23, 23 Sup. Ct. 521, 47 L. Ed. 689, and of this court in Ney v. Ney Mfg. Co., 69 Fed. 405, 407, 408, 16 C. C. A. 293, show situations like that in Boyd v. Janesville Co., and do not lend support to the idea that the junior patent tends to prove anything more than patentable difference.

[6] The Herman patent which we have been considering and this Wagenhorst patent were copending, and no interference was declared or suggested. The cases which undertake to draw from this situation an inference of noninfringement also overlook the distinction between generic and specific claims. If there are two applications pending at the same time, each disclosing the same apparatus for the specific application of a broad idea, but one claiming only the broad idea and the other claiming only the specific form, each one is held to disclaim what he does not claim; there is no inconsistency in the grant of separate patents to the separate individuals; and there is in theory no cause for interference. In practice the Patent Office rules have sometimes provided for no interference in such a case, and have sometimes made it the duty of the examiner to suggest the claims of each to the other so that the parties might get themselves into interference if they wished; but the Patent Office rules on this subject have been so variant and the practice so confused and the discovery of such inchoate conflict among the large mass of applications is so fortuitous that the failure to declare an interference can rarely have much evidential force. We do not regard it as important in this case.

[7] Claims 16 and 17 of patent 777,096 (the next ones relied upon) are not supported by the presence of the hydraulic cylinder in the combination, but find their only alleged novelty in the idea of mounting the printing cylinder and the light apparatus and the controlling, lowering means upon a single frame, so that the apparatus is "portable," or so that all parts are movable in unison, or so that it is, as counsel now say, "self-contained." The various parts do not operate in any different way, and have no different relation to each other when mounted on the same portable frame than when mounted separately upon the floor or walls of a room. There are cases where the mounting or assembling of the elements with reference to each other gives them some distinct combination function which they did not have when otherwise positioned; but this is not such a case. Hendy v. Miners' Union Wks., 127 U. S. 370, 375, 8 Sup. Ct. 1275, 32 L. Ed. 207. These claims are invalid for lack of invention.

[8] Claim 18 of the same patent is next involved. It is directed to, and its validity can rest only on, the claimed adjustable character of the stop carried in connection with and moved by the liquid cylinder piston rod, and which stop automatically breaks the current and ends the exposure. The claim says "adjustable stop." Neither the drawing nor specification indicates that the stop is adjustable, and there is no reference to this function. If in any case there could be invention

due solely to this feature, there is here no disclosure sufficient to support the claim. It is invalid.

[9] Complainant next counts upon claims 32 and 33 of patent 721,-041. There is little, if any, difference between the two claims. Claim 33 reads:

"In a printing apparatus a printing cylinder, an electric lamp, electric connections with the lamp, and means including differential pulleys for controlling the descent of the lamp into the cylinder, as and for the purpose described."

There is no theory of validity in this claim, as compared with several earlier devices, except as due to the presence of the "differential means," whereby the rate of motion of the falling lamp may be made different from the rate of motion of the primary controller. The earlier patents in this art indicate that they used differential means for this purpose; but, however that may be, the interposition of differential pulleys between two moving parts is so common and obvious an expedient that upon it invention cannot be predicated. These claims are invalid.

[10] Complainant also alleges infringement of claim 7 of patent 743,160. This claim reads:

"In a printing apparatus, a printing cylinder, an electrical lamp mounted within the cylinder, an electrical circuit in connection with said lamp, a rotary circuit connector in said circuit, and means for automatically breaking the circuit at a predetermined time, substantially as described."

The specification of this patent shows a vertical cylinder mounted on horizontal trunnions and carrying a lamp permanently mounted and held centrally within the cylinder. The sole method of regulating the exposure is to turn on and off the electric current. We do not decide whether there was invention in this combination in the form of structure so described. In order to reach the defendant's machine, the claim must be construed broadly enough to include the old type of construction in which the lamp is suspended above the cylinder and lowered into it; and, if so, it confessedly involves no validity, except as dependent on adding to existing combinations the rotary circuit connector which maintains the circuit when the cylinder is tilted on the trunnions. There would be no invention in the claim so considered. A rotary circuit connector is essential in any electric apparatus where the current is to be transmitted between a stationary and a rotating part. Instances of such application are shown in the record, and are familiar to every one. The mere addition of such a device to an existing structure could not be invention.

It follows that validity and infringement are found as to claims 12 and 13 of patent 777,096, and that the complainant is entitled to the usual interlocutory decree on these claims, and that, as to the remaining claims sued upon, the bill was rightly dismissed.

[11] Claims 16, 17, and 18 of this patent having been found invalid, the patent as an entity is therefore invalid in its present form, and the court below will enter a decree awarding an injunction and accounting on claims 12 and 13 only, in case the complainant, within 30 days from the filing of the mandate below, files a certified copy of a due

disclaimer under these three claims. Morgan Engineering Co. v. Alliance Co., 176 Fed. 100, 100 C. C. A. 30; Page v. Dow, 168 Fed. 703, 94 C. C. A. 209.

Appellant will recover costs of this court. In the court below neither party should have costs, as to patent 777,096, but defendant should, as to both the other patents. This result can be approximated by directing that defendant recover, in the court below, one-half its costs on the entire record; and it will be so ordered.