The decree of the District Court is accordingly affirmed, with costs.

---

FT. PITT SUPPLY CO. et al. v. IRELAND & MATTHEWS MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. May 2, 1916.)

No. 2776.

1. Patents ⬯328—Invention—Flushing Valve Mechanism.

The Young & Robertshaw patent, No. 925,550, for mechanism for operating flushing valves of water-closet tanks, is for a device operating the same as those of the prior art, the only novelty claimed being in the unitary nature of the mechanism, requiring only a single means of attachment to the tank, and but one hole in the tank wall; and while such device has merit and usefulness, it involves the exercise of only mechanical skill, and is void for lack of invention.

2. Patents ⬯34—"Invention"—Prior Art.

All elements of the prior art have a bearing upon the question whether there is "invention" in the device of a patent, and it is not necessary to a finding of lack of invention that every element be found in one embodiment of the prior art.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 38; Dec. Dig. ⬯34.

For other definitions, see Words and Phrases, First and Second Series, Invention.]

3. Patents ⬯26(1)—Invention—Combination of Old Elements.

It is not invention merely to combine into one unitary structure mechanism formerly made in separate pieces, so long as each element operates in the same way to produce the same result.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⬯26(1).]

4. Patents ⬯36—Invention—Question of Fact.

The question of invention is at the last one of fact.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 40; Dec. Dig. ⬯36.]

---

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Ft. Pitt Supply Company and another against the Ireland & Matthews Manufacturing Company. Decree for defendant, and complainants appeal. Affirmed.

F. W. Winter, of Pittsburgh, Pa., and A. H. Graves, of Chicago, Ill., for appellants.

Wm. M. Swan, of Detroit, Mich., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and EVANS, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent No. 925,550, June 22, 1909, issued to plaintiff Ft. Pitt Supply Company as assignee of Young & Robertshaw. Plaintiff Frost Manufacturing Company is licensee under the patent. The defenses are invalidity and lack of infringement. On hearing upon pleadings and proofs the district judge held the patent not infringed, and entered decree dismissing the bill. The appeal is from this decree.

[1] The patent relates to mechanism for operating the familiar type of water-closet flush valve, which is closed by a vertically operable plunger, and opened by the lifting of the plunger through the raising of a horizontal arm connected with the lift rod. We reproduce the patent drawings, reduced in size:

The mechanism, so far as necessary to be stated, is seen to be this: A plate 3 on the inner side of the tank wall has mounted thereon a valve-operating lever 9 fulcrumed at 8, and having cam faces 20 and 21; from the opposite side of the plate 3 a sleeve 4, integral

with the plate, extends through the tank wall *2*, the outer end of the sleeve being threaded to receive a cap nut *5*, which serves to secure the plate to the tank and to give finish on the outside of the tank; a projection *6* on the plate *3* enters a suitable hole in the tank wall and prevents the plate from turning; within the sleeve *4* is carried from the outside the lever *13* (operated by the handle *14*) which actuates a sleeve *15* fitted upon the squared inner end of the actuating lever *13*; the turning of the handle *14* actuating the lever *13* causes the roller *19* on the sleeve *15* to contact with the cam faces *20* and *21* of the lever *9*, so tripping the lever and thereby raising the rod *10* which lifts the plunger.

The claims in suit are 1, 2, 4, 5, 6, 7, and 9.  Claim 4, which is the broadest, is as follows:

"4. Mechanism for operating flushing valves, comprising a plate provided with a threaded sleeve projecting therefrom and arranged to extend through the wall of the tank and with a lever fulcrum center at the side of said sleeve, a lever fulcrumed on said center, a rotatable actuating shaft projecting through the sleeve and operatively connected to said lever, and a finishing nut on the outer end of the sleeve serving to secure the fitting to the tank and conceal the opening."

The main question is whether the patent involves invention.  The art is old and crowded.  No novelty is claimed in the flushing mechanism itself.  Not only was the plunger valve old, but there was nothing novel in actuating the plunger through the tilting of a fulcrumed horizontal bar within the tank connecting with a vertical plunger rod; nor in rocking the bar by means of a handle on the outside of the tank, swinging in both directions—a method specially adapted to tanks of the low-down type.  Indeed, Tilden (No. 821,-002) had in 1906 shown substantially the complete flushing valve operating mechanism of the patent in suit, save only the unitary feature hereafter discussed.  While Tilden did not employ a cap nut for securing the fitting to the outside of the tank, there was no invention in its use; it was common in the arts generally, and is found specifically in the patent to Malcolm, No. 468,725, which, however, was for a tilting tank, and had no flush valve.  Nor was there invention in the use of the threaded sleeve extending through the tank-wall and carrying the operating lever.  That is an ordinary mechanical expedient.  It is found in fact in Malcolm's flushing tank device.  There was likewise no invention in employing the device for preventing the movement of the operating shaft too far in either direction.  In fact, invention is not claimed with respect to either or all of the features mentioned.

The feature relied upon as differentiating the patent in suit from the prior art, and as constituting invention, is the unitary nature of the mechanism, in that it has only a single means of attachment to the tank, which means of attachment carries both elements of the operating mechanism, including the integral sleeve.  As stated in the patent specification, "both the center of the operating shaft *13* and also the center on which the valve operating lever *9* is fulcrumed are carried on" one fitting, viz. the plate *3* on the inner side of the tank-wall; whereas, as also said in the specification, "with

all prior valve mechanisms the tank or wall had to have separately attached thereto at least two centers, sometimes more." This construction makes the device more readily and accurately attachable, in that it dispenses with the necessity of positioning the fulcrum pin and the actuating lever *13* relatively to each other (thus removing danger from unskilled or careless workmanship), and requires but one hole in the tank wall; it being practically necessary in the case of porcelain and enameled iron tanks to have the holes made at the factory. The unitary construction of course also makes the fixture more readily detachable, less liable to get out of order, and apparently less expensive. The question is: Does this unitary construction alone amount to invention? It is clear that the *operation* of the device is precisely the same in all respects whether the pin *8*, on which the lever *9* is fulcrumed, is an integral part of the plate *3* or whether it is inserted from the outside through the tank wall and *directly* secured thereto, instead of being *indirectly* so secured, by being part of the otherwise secured plate *3*. In the former case the device of the patent would plainly lack invention.

This unitary construction of a flush-valve mechanism on the *inner wall* of the tank was apparently new; although White had in 1889 (patent No. 398,681) shown a construction whereby the valve-operating lever and the hand-actuated lever (which had a cam connection) are both fulcrumed upon an integral bracket upon the upper edge of the tank, presumably of the elevated type; White's mechanism was of the chain type, and his lever oscillated in but one direction.

Neither of the references cited by defendant show anticipation. But the question we are dealing with is not one of anticipation, but of invention: and upon the question whether the device of the patent involves more than the skill of the mechanic, neither White nor the reference to the lock and latch art are wholly irrelevant.

[2, 3] All elements of the prior art have a bearing upon the question whether there is invention in the device under consideration (Zimmerman v. Advance Machinery Co., 232 Fed. 866, —— C. C. A. ——, decided by this court April 10th last); and it is not necessary to a finding of lack of invention that every element be found in one embodiment of the prior art (Keene v. New Idea Spreader Co., 231 Fed. 701, —— C. C. A. ——, decided by this court March 17, 1916). It is not invention merely to combine into one unitary structure mechanism formerly made in separate pieces, so long as each element operates in the same way to produce the same result. Caster Co. v. Caster Co. (C. C. A. 6) 113 Fed. 162, 168, 51 C. C. A. 109; Eames v. Worcester Institute (C. C. A. 6) 123 Fed. 67, 73, 60 C. C. A. 37, and cases cited; Herman v. Youngstown Car Mfg. Co. (C. C. A. 6) 191 Fed. 579, 586, 112 C. C. A. 185; Gould v. Cincinnati Shaper Co. (C. C. A. 6) 194 Fed. 680, 685, 115 C. C. A. 74. And while that proposition is not conclusive of the problem here, it is not without pertinency, for here the relative arrangement of the several parts of the valve-operating mechanism is the same, and each performs its mechanical functions in precisely the same way as if they were mounted separately instead of as parts of a unitary construction—and this

without addition or adaptation. The case before us is thus distinguishable from the cases cited by plaintiff, in that here the feature of unitary construction (through the indirect attachment to the tank wall of the valve-operating lever and the integral sleeve by the use of the plate) is alone relied on as constituting invention. For example: In Scaife v. Woolen Mills Co. it was said by Judge Denison (209 Fed. at page 218 [126 C. C. A. 304]):

"Greth [the patentee] adapted and combined together the treatment and settlement tanks of De la Coux, the separable unit idea of the city water systems, and the cleaning by reverse flow * * * found in other filters. To do this, he devised suitable forms and arrangement for an entire unitary structure, and for the filtering apparatus, gates, and inlet and outlet pipes necessary. All had to be adapted to the combination."

The device of the patent in suit is not a new machine. The only problem solved is one of convenience and usefulness, resulting only from the unitary mounting. It fairly expresses the applicants' advance to say that they assembled upon one supporting frame the same operating parts which had before been carried upon separate supporting members, and that these parts accomplished the same operative result in the same essential inter-relation, after the reassembly as before.

The favorable public reception of plaintiff's device is not highly persuasive of invention. Plaintiff Frost, after speaking of the earlier method of flushing, says that:

"With the advent of the low-down tank * * * some other means of flushing had to be found. The latest practice is this type of lever, which presents a very neat appearance on the outside of the tank and is also a very convenient method of flushing. * * * The trade has very largely turned to this type of lever. The push button is still used to some extent, to a very small extent compared to what it used to be."

The push button type differs from the rocking lever type of mechanism.

It is fairly inferable that the favor with which plaintiff's structure has been received rests in considerable measure upon the low-down tank feature and the rocking lever operated by a double-swing handle, specially adapted thereto. Neither of these features originated with plaintiff's assignors; Tilden employed them both, and his structure seems not to have been superseded. Nor is it a case where long-continued and unsuccessful attempts to solve a problem evidence more than mechanical skill in its ultimate solution; for the unitary mounting seems to have been occasioned by the introduction of enameled iron and porcelain tanks (which have only recently come into anything like common use), whose use made more than one hole in the tank wall specially undesirable. There is no evidence that the problem of unitary construction was not promptly solved when occasion therefor was presented. Neither Young nor Robertshaw testified, nor is there any testimony on the part of any one connected with the working out of the asserted invention.

[4] Taking into account all the considerations presented which bear upon the question of invention, 'which is at the last a question of fact (Herman v. Youngstown Car Mfg. Co. [C. C. A. 6] 191 Fed.

579, 112 C. C. A. 185; Ferro Concrete Co. v. Concrete Steel Co.
[C. C. A. 6] 206 Fed. 666, 668, 124 C. C. A. 466; Loose Leaf Co.
v. Loose Leaf Binder Co., 230 Fed. 120, —— C. C. A. ——, decided by
this court December 15, 1915), we are impressed that while the de-
vice of the patent has merit and usefulness, it is only a manufactur-
ing expedient, involving no more than mechanical skill.

The judgment of the District Court is accordingly affirmed, with
costs.