MICHIGAN ENGINE VALVE CO. v. MONARCH MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1916.)

No. 2759.

1. PATENTS ☞328—INFRINGEMENT—SASH CENTER.
    The Golden patent, No. 659,144, for a sash center or hinge, as limited by the prior art and the proceedings in the Patent Office, held not infringed.

2. PATENTS ☞168(2)—CONSTRUCTION—SELF-IMPOSED LIMITATION.
    An intentional limitation of a claim by the patentee by amendment is none the less effective because it was not necessary to patentability.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. ☞168(2).]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Michigan Engine Valve Company against the Monarch Manufacturing Company. From the decree, complainant appeals. Affirmed.

C. R. Stickney, of Detroit, Mich., for appellant.
Wm. M. Swan, of Detroit, Mich., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. [1] Suit for infringement of United States patent No. 659,144 to Golden, October 2, 1900, and for unfair

competition. Upon hearing on pleadings and proofs, the District Court held the patent not infringed, but found that defendant had committed acts of unfair competition. Plaintiff alone appeals.

The patent relates to sash "centers" or hinges. As described in the patent and illustrated by its drawings, shown (reduced) below, the device consists of a frame-member *A*, preferably in the form of a circular plate of greater diameter than the thickness of the sash; projecting centrally from this plate is the pivot-pin *B;* sleeved upon the pin is a "holding-plate" *C*, shown in substantially rectangular form, with its corners cut away. Upon the pivot-pin is sleeved a coiled spring *D*, one end bearing against the holding-plate *C*, the other against a shoulder *E* (on the pivot-pin), shown as a washer detachably secured by a pin. The tension of the spring thus holds the plate *C* against the frame-plate *A*, and the ribs or projections *d* upon the former in engagement with radial grooves or notches *C* on the latter plate. To the edge of the sash is secured (through screw openings) a plate *G*, having an aperture *g* in form corresponding to the form of the holding-plate *C*. The sash-plate being fixed in position, the pivot-pin on the frame-member *A* (which member carries in unitary and permanently assembled form not only the pin and its coiled spring, but the holding-plate *C*) is inserted in a recess centrally of the aperture *g* in the sash-plate *G*, the opposite plate *A* being then secured upon the frame. As the plate *C*, secured to the frame-plate, exactly fits the aperture *g* in the sash-plate, it "forms in effect" (as said, in the specification) "a portion of the sash-member *G* and the bearing upon the pivot *b*"; and as it is not attached to the sash-member it is free to slide in the aperture *g* thereof as its ribs engage or disengage from the notches in the frame-plate.

The patent has three claims, each of which is in issue. We print the first claim in the margin.[1] The second claim differs from the first, so far as here material, (a) in that the holding-plate is described as in "notched engagement with said securing plate" instead of "bearing against it," as in the first claim; and (b) the sash-plate is stated as "recessed to receive" the holding-plate instead of being in "detachable

[1] "1. A sash-center comprising a member consisting of a securing-plate having an integral centrally-projecting pin, a holding-plate sleeved upon said pin and bearing against said securing-plate, a spring sleeved upon said pin and bearing against said holding-plate, an abutment for said spring secured to said pin and a securing member having a detachable engagement with said holding-plate preventing independent rotation thereof."

engagement therewith," as in the first claim.   The third claim will be mentioned later.

Defendant's structure is specially adapted to windows having a hanging stile, although it can be adapted to the ordinary sash and frame construction; and, for the purposes of this opinion, we shall treat it as a sash and frame device.   It consists of two plates, one rectangular in form, the other substantially so, one plate having on its face radially extending grooves; through a slot in the other plate there projects from the opposite side a ribbed member, or holding-plate, for engaging the grooves of the opposite plate; the two plates are tied together by a pivot-pin nonintegral in construction and not permanently attached to either plate; on this pin is sleeved a coiled spring which tends to force the two plates into engagement.   The structure can be mounted only when its several parts (including the sash and frame plates) are so tied together.

Whether defendant infringes depends upon how broadly the claims are to be construed in view of the prior art, and the limitations, if any, imposed by the Patent Office history of the application.   When Golden entered the field there was nothing new in the idea of a hinge or "center" for or adaptable to window sashes, comprising two plates with juxtaposed faces notched, or with opposite depressions and projections, connected by a hinge-pin carrying a spring automatically holding the plates in locked engagement with each other, and permitting their movement relatively to each other.   It is enough to refer in this connection to the patent to Musser, No. 220,303 (1879), on self-locking door and shutter hinge; No. 514,890, to Heilman (1894), on satchel or bag frame (readily adaptable to use as a sash-center); No. 498,551 (1893), to Howarth, on transom pivots or window-sash centers; and No. 246,410 (1881), to Morgan, for automatic sash pivot.

The application as presented contains neither of the claims as finally allowed.   The first claim, as applied for, and which was the broadest, is printed in the margin.[2]   The second claim differed from the first, so far as here pertinent, only in that the holding-plate was made to *slidingly engage* the recess in the sash-plate; the third claim differed from the first in that the frame-plate (A) was described as "radially notched" and the holding-plate (C) as having a rib "for engaging with said radial notches."

All three of these claims were rejected by the patent office on reference to Morgan.   Thereupon the present claims were substituted and allowed without discussion.   Morgan disclosed a sash-center having a plate attached to the sash, to which plate was clamped a pivot-pin projecting therefrom into the frame, through a face plate attached thereto and sleeved upon the pin.   This pin carried, within the frame-member, a holding-plate likewise sleeved upon the pin, bearing upon and in notched engagement with a disk-plate formed integrally with the pin; one end of a coiled spring sleeved upon the pin bore against

---

[2] "1. A sash center, comprising a sash and a frame member, a pin on the one projecting into a recess in the other, a holding member engaging with said recess and held from rotation therein being also sleeved upon said pin and a spring secured upon said pin adapted to press said holding member against said member supporting the pin."

the holding-plate, the other end against a cylindrical case forming the frame securing-member, which latter member not only was not integral with the pin, but was connected therewith only by being itself attached to the frame face-plate sleeved upon the pin.

In comparing Morgan and Golden it is to be observed that the latter distinguishes his two members as the "securing plate" and "securing member," while Morgan does not use distinguishing terms for his parts attached respectively to the casing and the sash. Morgan's and Golden's elements are so different in relative position that it is impossible to say with certainty which of Morgan's members (the cylindrical case forming the securing member attached to the frame face-plate or the plate to which the squared end of the pivot-pin was clamped) is the more analogous to Golden's "securing plate having an integral centrally-projecting pin." If the one view be taken then Morgan's centrally-projecting pin is not integral with its member either in construction or operation, because the member revolves freely upon the pin; if the other view be taken we find that the pin is constructed entirely separate from its member, and is attached thereto only by screw clamps when the parts are all put together for complete operation. In such case the pin and member are in one sense integral—that is, after being assembled they are in rigid relation to each other—but they are not integral in construction. True, Morgan's "disk-plate" before referred to was integral with the pivot-pin, but it seems a reasonable presumption that when Golden, upon his reference to Morgan, inserted the limiting requirement that the securing plate should have an integral centrally-projecting pin, he intended to distinguish from Morgan in that respect.

[2] We think it clear that claims 1 and 2 of the patent in suit must be construed as limiting the pin centrally-projecting from the securing plate as formed integral therewith; for, conceding that there was nothing in the patent office rejection of the claims on reference to Morgan which made it necessary to limit the claims to a pin formed integral with the plate, and that such limitation was not necessary to patentability, yet an intentional limitation is none the less effective because unnecessary or self-imposed. McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Cimiotti v. American Co., 198 U. S. 399, 415, 25 Sup. Ct. 697, 49 L. Ed. 1100. Whichever view Golden took of the Morgan plate-and-pin relationship, he must have intended to use the word "integral" in such a sense as to distinguish his pin from Morgan's pin; and in neither view can it be said that Morgan's pin is *not* integral, but that both Golden's pin and defendant's pin *are* respectively integral with their securing members. Adopting that general view of defendant's device which would classify it with Golden rather than with Morgan, and giving to "integral" in Golden's device the meaning which will distinguish it from Morgan, it distinguishes also from defendant. The intention to limit to an integral construction seems the more obvious from the facts that the specification states that the pin is "preferably formed integral with the plate," and that the original claims made no mention of integral construction—the use of the word "integral" in the substituted claims thus raising the natural inference that the word was intended in the

same sense as used in the specification, viz.: *"formed* integral with the plate."

In our opinion, the first and second claims are not infringed by defendant's device, which does not employ a pin formed integral with the plate, even though (as is not entirely clear) the pin would be equally effective if so formed.

The third claim will be found in the margin.[3] Defendant insists that its device has not the "angle-plate" of the Golden patent (not appearing by that name in the original claims), and which is described in the patent as "secured to the edge of the sash, and preferably provided with the angle flange *f* adapted to be secured to the *face* of the sash rail." As described in the specification and shown in the drawings, the sash member, if an "angle-plate," is to be fastened on not only the edge, but on the "face" of the rail, as distinguished from the "edge"; and while defendant's plate has a very slight projection at one edge, presumably for the purpose of preventing the sliding of the plate, it has no means of securing the "flange" to the face of the sash. But, in the view we take of the case, we need not determine whether infringement is thus avoided.

Claim 3 contains as an element a "sash member * * * having a recess *g* adapted to receive the plate *C,* substantially as and for the purpose described." Of this engagement the specification says:

"As the plate *C* exactly fits the aperture, it forms, in effect, a portion of the sash member *G* and the bearing upon the pivot *b.* At the same time it is free to slide in the aperture *g,* so as to permit the lugs or ribs *d* to engage or disengage from the notches *c,* and thereby to allow the sash to turn on its pivot."

This construction permits the sliding of the holding-plate in the aperture of the sash-plate without altering the tension of the spring. As the pivot-pin extends beyond the holding-plate and its outer end has no bearing, and the spring is entirely outside the plate, the sliding connection of the holding-plate with the sash face-plate permits compensation for space between the sash and the frame (due to shrinking of the sash or otherwise) to the extent of the thickness of the "recess" in the sash-plate (which in the exhibit shown is about three-eighths of an inch), and without affecting the tension of the spring or the effectiveness of the device.

Defendant's device does not embody the substance of this organization; even when we treat defendant's sash member and frame member as so interchanged that the claim might, in a general way, be applied, we find that the sash-plate and the frame-plate are not detachably connected, but are tied together; that, while the holding-plate is permitted to slide in the sash-plate as it rises and falls while its projecting rib passes from one notch to another in the frame-plate, yet this motion is limited

---

[3] "3. A sash-center comprising the frame member consisting of a plate, *A,* having radial notches, *c,* thereon and a centrally-projecting pin, *B,* the plate *C* pivoted upon said pin and having the ribs *d,* the spring *D* sleeved upon the pin and the collar *E* forming an abutment therefor; and a sash member comprising an angle-plate adapted to be secured to the side rail of the sash and having a recess *g* adapted to receive the plate *C,* substantially as and for the purpose described."

and does not allow the holding-plate to become detached from the sash-plate; that the frame-plate and the sash-plate are normally held tightly against each other by the tension of the spring, and that the two plates cannot move to and from each other as the sash and frame shrink or swell, except as such motion is permitted by and affects the tension of the spring. While, in a broad sense, the sash member has a "recess adapted to receive" the holding-plate, yet this recess and its adaption are such as to prohibit, instead of to permit, that detachability and that change of relative position, without affecting the spring tension, which are characteristic of plaintiff's invention.

Defendant's device does not, we think, contain in form, substance or spirit the equivalent of the conspicuous and characteristic feature of the patent embraced by the element under consideration (and which Golden seems to have been the first to disclose), by which the frame-plate, holding-plate, pivot-pin and coiled spring are organized into a unit and, so organized, brought into recessed, yielding and freely detachable engagement with the sash member. It need scarcely be said that the fact that plaintiff makes a structure similar to defendant's, which it claims is manufactured under the patent, has no tendency to show that defendant's construction infringes.

For the reasons stated, if for no other, we think neither of the claims infringed.

The judgment of the District Court is accordingly affirmed.

3. TRADE-MARKS AND TRADE-NAMES ⬮100—UNFAIR COMPETITION—RELIEF.
    In such case, as the buyers of cars which would ordinarily be equipped with complainant's plugs would not be familiar with the cartons in which the plugs were sold, dissimilarity as to such cartons is no ground for denying relief, and defendant will be required, where the change

⬮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes