AKERS STEERING GEAR CO. v. GREAT LAKES ENGINEERING WORKS.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1916.)

No. 2801.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—AUXILIARY STEERING GEAR.
    The Akers patent, No. 772,309, for an auxiliary steering mechanism for vessels, discloses invention and is valid, but, in view of the prior art, is not of broad scope. As so construed, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Akers Steering Gear Company against the Great Lakes Engineering Works. Decree for defendant, and complainant appeals. Affirmed.

C. C. Bulkley, of Chicago, Ill., for appellant.
James Whittemore, of Detroit, Mich., for appellee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. This suit was brought for infringement of several claims of each of two patents to Akers. The District Court dismissed the bill. By this appeal we are asked to review so much only of the decree below as relates to the finding that claim 18 of patent No. 772,309 (October 11, 1904) is not infringed by defendant.

The objects of the invention, as disclosed in the patent, include the providing of auxiliary steering gear for ships, so constructed as to be normally out of operative connection with the rudder, but which may promptly be brought into connection therewith when the main steering mechanism is disconnected, including means for connecting the auxiliary steering mechanism with the rudder, operable at a distance therefrom. By an earlier patent (No. 649,790, May 15, 1900) the inventor had disclosed means for throwing the auxiliary gear into connection with the rudder on the disabling of the main gear, but not for disconnecting the main steering gear; and the remaining object of the second invention is to provide means for disconnecting the main gear from the rudder at the time the auxiliary gear is brought into service, thereby relieving the latter from the burden of moving the tiller chains and quadrant of the main steering gear, and putting upon the auxiliary gear only the duty of controlling the rudder itself. To accomplish these objects the inventor discloses this device:

The hub of the quadrant which forms part of the main steering gear (and to which the tiller chains are attached) is slidingly and rotatingly mounted on the rudder post; the upper face of the hub is formed for engaging a clutch ring rigidly attached to the rudder post, so as to rotate therewith; the hub and ring being held in engagement, when the main steering gear is operative, by rods whose lower ends are attached to the quadrant hub, their upper ends engaging the upper face of the quadrant clutch collar, which rotatingly engages the rudder post.

The emergency steering device consists of a gear rigidly secured to the rudder post above the quadrant clutch collar, and meshing with a pinion rotatively secured to a vertical shaft, which shaft is rotatively secured to the vessel and extends to the upper deck, where it is operated by the usual steering wheels. A clutch collar formed integrally with the hub of the pinion referred to, and projecting upwardly, is adapted for rigid engagement with the lower face of a nonrotating clutch collar which slidingly engages the vertical shaft mentioned.

The emergency steering gear is held out of engagement, and thus made inoperative (as when the main gear is operative), by means of a trip extending under the upper clutch collar of the emergency gear. It is designed to be made operative, and the main gear inoperative, by a pull communicated through a winch in the emergency wheel stand to a chain or other flexible connection attached to the trip referred to, as well as to an arm extending from the quadrant collar of the main gear, thus causing the upper collar of the emergency gear to fall *into*

engagement, and the quadrant hub of the main gear to fall *out of* engagement.

The claim in issue reads as follows:

"18. The combination with the main steering mechanism of a boat, of an auxiliary steering mechanism, and means located adjacent to the rudder and operable by a device situated at a point distant from the rudder for disconnecting the rudder from the main steering mechanism when the auxiliary steering mechanism is brought into service."

The steering gear built by defendant for the steamer St. Clair constitutes the alleged infringement. That steering system is this: Forward of the rudder post are two separate shafts (one on each side of the center line of the ship), each carrying a pinion designed to mesh with a gear segment permanently fastened to the rudder post and forming its only driving means. Each shaft is directly and rotatively operated by a separate and immediately adjacent steam engine (port and starboard respectively), and carries above the pinion a clutch adapted to engage a clutch member on the upper face of the pinion. The respective pinions are thrown in or out of engagement with the gear segment on the rudder post through the operation, by the engineer, of the respective clutches through separate levers (communicating each with one of the clutches), located side by side about 20 feet forward, in the main engine room (but one lever being operable at a time), in connection with the simultaneous working of the steering wheel by the wheelsman in the wheelhouse, to facilitate the meshing of the clutches. The two engines are alike, and the steering gear can thus be operated indiscriminately by either engine, although, in practice, one is designated as main, and the other as auxiliary. Whether defendant's device infringes the claim in suit depends on what are the essential features of the invention of the patent, the advance made thereby, and the construction to be given certain language of the claim.

When Akers entered the field there was nothing new in providing ships with auxiliary steering mechanism, to take the place of a disabled main mechanism. It was not unusual to employ, on ocean steamers, duplicate steering engines, each provided to operate directly a separate pinion for driving a single gear segment attached to the rudder post—but one engine to be actually in place at a time. The substituting of engines, however, required several men and about half an hour's time. But numerous devices for quickly substituting an auxiliary or emergency gear for a main gear had been patented; for instance, Williamson alone had taken out at least four patents (one as early as 1887) on means for facilitating changing from steam to hand power. Nor was it novel to provide means for quickly disconnecting the one mechanism and connecting the other, operable at points distant from the rudder; indeed, all four of Williamson's shifting devices were intended for operation by the wheelsman in or near the wheelhouse. The same is true of other devices in the prior art.

The prior art also disclosed means for connecting and disconnecting the auxiliary and main steering gears, respectively, located at different places between the two sources of power and the rudder. Thus,

according to Williamson (No. 472,324, 1892), as well as several other devices, the disconnection of the steam power is shown at the steering drum, which is thereupon operable directly by the hand power. In Whitehead (No. 379,840, 1888) the means for connecting and disconnecting both the main and auxiliary mechanisms are located upon an upright shaft between the upper and lower decks, likewise operable within the wheelhouse; and we think there was no invention in locating the means for connecting and disconnecting the respective steering devices at one point or at one distance, rather than at another point or at another distance, away from the rudder post. It is obvious that the presence of a single steering gear between the rudder and the two sources of power has a pronounced disadvantage, because the failure of such common steering gear would leave the vessel helpless.

Turning again to the prior art: Whitehead, for example, used the same tiller chains whichever power was used, and, should the chains break or jam, the auxiliary gear would be as inoperative as the main gear. The same is true of the Williamson devices, which employed in both steering systems the same steering drum and the mechanism between the drum and the tiller. Moreover, practical experience had shown that there is an additional advantage in the complete separation from the rudder of the tiller chains or other appliances of the main steering mechanism, when the auxiliary mechanism is operative—in preventing the overhauling of such appliances, and thus leaving the auxiliary mechanism unburdened thereby and free to operate the rudder only, thus not only reducing wear and tear upon the auxiliary mechanism, but preventing interference therewith by jamming or otherwise.

Plaintiff's contention as to the scope and nature of Akers' invention, as stated in the brief of its counsel, is that:

"He was the first to connect two steering gears directly to the rudder, so that such steering gears—the one the main and the other the emergency gear —are entirely and completely independent of each other between the rudder and the source of power to operate the rudder, and then to provide connecting and disconnecting means respectively for the emergency and the main gear, so that when the emergency gear is in operation the main gear is entirely and completely disconnected."

We think this broad proposition is sustained by the record. Akers was not, however, the first to disclose a mechanism by which the auxiliary steering gear was directly connected to the rudder, or even to the segment operating it. Kirby (No. 582,931, 1897) had disclosed means for making the hand steering gear operative or inoperative, located directly upon the rudder, and operable from the forward part of the upper deck—the patent, however, showing no means of disconnecting the steam engine from the rudder, but stating that means for so doing were shown in a former application (not in evidence)—the specification stating that no part of the hand gear "should be connected with and move with the steam gear, whereby it would suffer wear and tear when steering by steam gear." Atkins (No. 439,716, 1890) had disclosed a hydraulic main steering gear whose engine piston was connected directly with a segmented tiller upon the rudder post, and

having a tubular capstan and pinion which, by means operated in the wheelhouse, is dropped into gear with teeth upon the segmental tiller referred to, and the rudder thereupon controlled by hand power applied directly to the capstan, apparently in the wheelhouse—the hydraulic engine being thereby entirely disengaged from the tiller. Atkins' device employed no tiller chains.

We are disposed to think, however, that Akers' device, as disclosed by the patent, did mark an advance in the art, and to concede the presence of invention in the claim in suit, notwithstanding the means shown in the patent for disconnecting the main and connecting the auxiliary mechanisms are effective to a limited extent only, and only in certain positions of the rudder; for it is to be presumed that effective means for the purpose are devisable, and the claim in suit is not limited to the specific means so shown. But we think that in view of the then existing art the invention was not a broad one, that the permissible range of equivalents is narrow, and that the invention must be limited to a construction in which, in the operation of the auxiliary steering device, the mechanism directly operating the rudder is entirely disconnected from and independent of the main steering mechanism.

Defendant's steering mechanism obviously differs from the device of the patent in suit in these respects: It employs no tiller chains (the power being applied directly to the segmental tiller, as was the case in Atkins and the duplicate steam engine equipment mentioned), and to that pinion-driven member (which for convenience or economy only is in form a segment, rather than a complete circle) the rudder is always operatively connected, and is moreover always in engagement (operative or inoperative) with both driving pinions; the connecting of one gear and the disconnecting of the other are not accomplished by a single means or by a single movement, but by separate means and separate movements. The gear segment is a prominent member of the main steering gear mechanism. The segment gear and its driving pinion perform the functions of plaintiff's tillerchains to the extent of communicating the power to the rudder, and are, we think, the equivalent of those chains for that purpose. From this segment the rudder is never disconnected. The claim thus does not read literally upon defendant's device. Nor is the latter within the spirit of the patent, for the connection of this gear segment with the rudder post and its engagement (although inoperative) with the pinion upon the shaft operated by the main steering engine precludes complete independence between the rudder and main steering mechanism. Not only does the connection with the pinion of the main steering mechanism, even when running idle, afford some friction, but there is always present the possibility of interference with the free movement of the rudder and auxiliary gear by the jamming of the segment gears with those of the pinion of the main mechanism, as is said to have actually happened in one instance, when the segment was carried past an operative connection with that pinion. The auxiliary mechanism is thus not left entirely unburdened and free to operate the rudder only, as is the case in the device of plaintiff's patent; or to use the language of the specification, "so that the work which devolves upon the auxiliary gear is

only that of controlling the rudder." We are therefore of opinion that the structure complained of does not infringe the claim in suit.

This conclusion makes it unnecessary to consider whether, in view of the differing language of the various claims, including the language employed by the specification in stating one of the objects of the invention, viz., "to provide means for disconnecting the main gear from the rudder *at the time* the auxiliary gear is brought into service"—the language in the claim in suit—*"means * * * for disconnecting the rudder from the main steering mechanism *when* the auxiliary steering mechanism is brought into service," should be construed as calling for a unitary means or device as distinguished from two separate devices for effecting the connection and disconnection of the auxiliary and main gears respectively, or as calling for simultaneous action of the connecting and disconnecting means, as distinguished from a device permitting operation of but one lever at a time.

The decree of the District Court is affirmed, with costs.