OHMER FARE REGISTER CO. v. OHMER et al.

(Circuit Court of Appeals, Sixth Circuit.   December 15, 1916.)

No. 2857.

1. PATENTS ⬅328—INVENTION—OPERATING MEANS FOR FARE REGISTERS.
   The Ohmer and Tyler reissue patent, No. 11,911 (original No. 635,343), for mechanism for operating fare registers, claims 12 and 13, construed broadly, are void for lack of invention, in view of the prior art.

2. PATENTS ⬅17—INVENTION—SCOPE OF PATENT.
   In considering the scope of an invention, to determine whether the advance made amounts to invention or only mechanical skill, the question is one of fact, taking into account the entire prior art.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 16, 17; Dec. Dig. ⬅17.]

3. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—FARE RECORDER.
   The Ohmer patent, No. 646,757, for a fare recorder, in view of the meritorious result obtained by the combination, marking a substantial advance in the art, discloses invention and is valid; also held infringed as to claims 4, 6, and 13, and not infringed as to claims 7 and 14.

4. PATENTS ⬅26(2)—COMBINATIONS—COMBINATION OR AGGREGATION.
   To constitute a combination, and not merely an aggregation, it is not necessary that all the constituents so enter into the combination as to coact all the time with all the others, or change the mode of connection with every other; but it is sufficient that the elements so coact that as a consequence of their union a new and useful result, and not a mere aggregation of several results, follows.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 29; Dec. Dig. ⬅26(2).]

5. PATENTS ⬅328—INFRINGEMENT—FARE REGISTER.
   The Ohmer, Tyler, and Breidenbach patent, No. 694,322, for a fare register, narrowly construed, as required by the prior time recorder art, held not infringed.

6. PATENTS ⬅56—PRIOR ART—ANALOGOUS ARTS.
   The time recorder art is analogous to the fare recorder art.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 89; Dec. Dig. ⬅56.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. PATENTS ☞22—INFRINGEMENT—MECHANICAL EQUIVALENTS.
    The doctrine of mechanical equivalency requires that the result be accomplished in substantially the same way, and the range of equivalents depends upon the advance made by the inventor in the art.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. ☞22.]

8. PATENTS ☞165—CONSTRUCTION—VOLUNTARY LIMITATION.
    An intentional limitation by a patentee is none the less effective, because unnecessary or self-imposed.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. ☞165.]

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by the Ohmer Fare Register Company against Wilfred I. Ohmer and others. Decree for defendants, and complainant appeals. Reversed.

R. J. McCarty, of Dayton, Ohio, for appellant.

H. A. Toulmin, of Dayton, Ohio, for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of three patents relating, respectively, to street car fare registers or fare recorders. The appeal is from a decree dismissing the bill for noninfringement.

[1] The first patent (reissue No. 11,911, May 28, 1901, to John F. Ohmer and another), relates to means for operating fare registers. The original patent issued October 24, 1899, and was followed by an intermediate reissue October 13, 1900. The patent expired pending this appeal. When the original patent was applied for (January 19, 1899), registers counting and indicating a single class of fares were old; and multiple fare registers—that is to say, registering two or more classes of fares—were not new. Such multiple registers were not only of the portable class, such as illustrated by Hornum's 1875 patent, and that to Ohmer himself issued in 1896, but included several types designed for permanent attachment to the car, as illustrated by the patent to Boyd (1896), which registered three separate classes of fares, the Wright patent (1896), also registering three classes of fares, and the patent to Ohmer himself (1897), adapted to a plurality of fares (the drawings showing five different classifications); and Kelch had, in 1898, applied for a patent (granted in 1902) disclosing mechanism for not only indicating and counting, but also for recording, two or more classes of fares. At least one three-fare register was in commercial use when the patent in suit was applied for.

The reissue in suit has no relation to the mechanism for indicating, registering, or recording fares. It relates merely to mechanism for operating or actuating the registering mechanism. The patent does not even mention fare recorders, although the means in question are obviously adapted to actuating the mechanism therefor, as well as that for counting and registering. The means illustrated and described in the

patent include a series of vertically movable slides, each having a laterally projecting foot, and adapted each to engage and actuate a given series of registering wheels and a fare display tablet. The invention, as stated in the patent, comprises means for actuating these' slides "separately and at different times." The actuating means consist of a depending arm carried by a horizontally slidable carriage, and adapted to be slid under the foot of the vertical slide associated with the desired bank of fare register wheels. The turning, by the conductor, of a rod conveniently disposed in the car (until the pointer on a dial indicates the fare collected), actuates a chain gear which moves the carriage to the desired position. This sets the actuator. A pull, by the conductor, on a rope connected with the transverse bar lifts it and in turn the depending arm, and thereby raises the vertical slide which actuates the register wheel.

The patent has 13 claims, Nos. 12 and 13 being the only ones in issue. Each of the first 5 claims contains as elements both the horizontal and vertical sliding members referred to. Claims 6 to 11 are somewhat broader. Claim 12 is printed in the margin.[1] Claim 13 differs from claim 12 only in calling for the second movement of the actuating device "in planes at an angle to the plane of said initial movements," and for parallel relation between the two operating members, which in plaintiff's mechanism, as disclosed and as manufactured, are the setting rod and the actuating rope.

Defendants' operating means may be thus compared and contrasted with plaintiff's: (a) Defendants' actuating device, instead of being a depending arm of a transversely moving carriage, is a sleeve (splined upon a shaft) itself made to slide transversely of the machine, and carrying two oppositely disposed projections; (b) defendants' actuating device, instead of being brought into initial position by the turning of the rod which actuates the carriage from which the actuating arm depends, is brought into such initial position by means of a carriage or block between whose lugs the actuating member lies loosely, the carriage being mounted upon a screw shaft adjacent to the shaft carrying the actuating member; the revolving of the screw shaft by means of a rod causing the carriage to move upon its shaft, and thus the actuating member to move upon its own separate shaft; (c) defendants' actuating device, instead of being actuated by the lifting (through the rope) of the transversely moving member carrying the depending arm, is so actuated by the reciprocating movement, transversely of the machine (through the operation of a separate rod controlled by the conductor), of a shaft which, through suitable gears, turns the shaft on which the actuating device is splined, so bringing one

---

[1] "12. In operating means for fare registers, the combination of an actuating device adapted to be initially moved to various positions to engage mechanism of a fare register, and adapted to be subsequently moved to actuate said fare register mechanism, operating members connected with said actuating device and attached to a car, one of said operating members being adapted to shift said actuating device in its first or initial movement, and the other of said operating members being adapted to operate said actuating device in its second or subsequent movements."

of the projections thereon into engagement with the registering mechanism. Defendants' operating members are thus two separate rods, as compared with plaintiff's rod and cord; the two rods being disposed in the car parallel to each other. Defendants' operating mechanism differs materially from that of plaintiff, especially in the second actuating movement; but the claims in suit, if broadly construed, read upon defendants' device. An important question is whether, in view of the prior art, the claims are valid, if construed broadly enough to cover defendants' mechanism.

No invention was involved in the first element of the combination of the claims in suit, viz., an actuating device adapted to be moved, first, to the appropriate setting position, and, second, to actuate the registering mechanism; nor in making the planes of the two movements in angular relation to each other. Such devices were common, not only in the related arts, but in the fare register art itself; several of the devices disclosing actuators in the form of slides. For example: In the Roney and Mead voting machine patents (the voting register art is analogous to that of fare registers[2]) the actuator moves sidewise to engage the recorder slide and vertically to actuate it. In the Howe voting machine patent a crank handle operated by the voter moves a sliding block in position to actuate the desired slide, and the movement of the turnstile as the voter leaves the booth operates gearing which actuates the slide and records the vote. The plane of the second movement is angular to that of the first. It is enough, however, to refer to Ohmer's 1897 fare register patent, which discloses a plurality of slides radially mounted, an actuator in the form of a finger on a rod, movable to position to engage and actuate any one of the slides, as directed on the dial by the position of the pointer on the operating rod; the actuator being set by the rotation of the rod and actuated by a sliding movement outwardly. If it be thought that invention can be found in raising the actuating mechanism by means of a vertical slide, it is enough that the defendants have not that device.

It is evident that any invention which may be found to exist in the broad claims in suit must reside in the inclusion in the combination of two operating members, both connected with the actuator; the one adapted to shift it into setting position, the other to actuate it. (We pass for the present the parallel position of the two operating members called for by claim 13.) In the fare-registering devices of Kelch and Boyd a separate operating device (in those cases a cord) is employed for each class of fare to be registered. In the Ohmer 1897 patent a single rod is employed for both the setting and actuating movements—the rotary movement of the rod setting the actuator, and the longitudinal movement giving it an outward sliding motion. The inventors in the patent in suit which we are now considering distinguish their operating device as an improvement over such methods of operation. The ultimate question would seem to be whether, in view of the prior art, the broad employment of separate setting and actuating members, including their arrangement in the car, involves invention?

[2] In Ohmer's 1897 fare register patent the mechanism was treated as applicable to operating a cash register from distant points.

According to Wright's fare indicator and recorder patent (1896), the desired counting and indicator wheel and the recorder wheel are operated by a cord in the car operated by the conductor; another cord, also in the car, is used for actuating the recording mechanism. In the Kennelly fare register patent (1895) the turning of a shaft by the conductor puts an actuator into operative connection with one of the two registers; a pull upon a separate rod moves the actuator and thus the register. True, in Wright's device the separate classifications are dollars, dimes, and cents, and his cords did not effect the same movements as plaintiff's rod and cord; and in Kennelly the selection is between "up" and "down" fares, and is made only at the beginning of the respective trips. But manifestly Wright's mechanism is equally adapted to three classifications of fares, and illustrates an arrangement of operating members within the car. Kennelly's mechanism is likewise adapted to the performing of both operations in the case of each fare. Kennelly's mechanism, however, was operable only at the register.[3] And it is said that the one-rod setting and actuating mechanism of Ohmer's 1897 patent was not suitable to long cars by reason especially of the tendency of the rod to sag and thus interfere with its effective longitudinal movement. It is urged that a valuable and novel feature is thus found in the parallel arrangement within the car of two operating members (setting and actuating respectively) accessible to the conductor at a variety of positions within the car. In fact, the claims in suit call only for an attachment of the two operating members to the car. But, disregarding this, it is obvious that, so far as the setting mechanism is concerned, the device of Ohmer's 1897 patent had the useful feature of accessibility generally in the car claimed for the mechanism of the patent in suit. In view of this earlier Ohmer device, and the devices of Wright and Kennelly, it is difficult to find invention in the employment of two separate members (in place of a common member) for the setting and actuating operations, respectively; and it would seem that, in view of the common use of cords for mere purposes of pull, not only in the arts generally, but in the fare counter and register arts in particular, the employment of a cord would naturally suggest itself to a skilled mechanic as avoiding the difficulty said to have been experienced with Ohmer's single rod setting machine. See Vulcan Soot Cleaner Co. v. Diamond Co., 237 Fed. 818, —— C. C. A. ——, decided by this court November 8, 1916.

We cannot think that, in view of the prior art, the mere disposing of the setting and actuating members in parallel relation to each other, or so as to be operable in a part of the car remote from the machine, involves any degree of invention. Aron v. Manhattan Ry. Co., 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272; Akers Co. v. Great Lakes Works, 237 Fed. 359, —— C. C. A. ——, decided by this court November 8, 1916.

[2] We are cited to no reference in the prior art fully anticipating the patent in suit. But we are considering the scope of invention, not

---

[3] Having in mind what has been said about Kennelly's disclosure, claim 12 in suit can be made to read literally upon it, although this fact is by no means conclusive of the question of invention.

anticipation; and in such inquiry the question is one of fact, taking into account the entire prior art, whether the advance made in the given case amounts to invention or only mechanical skill. Herman v. Youngstown Co. (C. C. A. 6) 191 Fed. 579, 112 C. C. A. 185; Ferro Concrete Co. v. Concrete Steel Co. (C. C. A. 6) 206 Fed. 666, 668, 124 C. C. A. 466; Ft. Pitt Co. v. I. & M. Mfg. Co. (C. C. A. 6) 232 Fed. 871, 875, 147 C. C. A. 65. All elements of the prior art have a bearing upon the question of invention; it being unnecessary to a finding of lack of invention that every element be found in one embodiment. Zimmerman v. Machinery Co. (C. C. A. 6) 232 Fed. 866, 868, 147 C. C. A. 60; Keene v. New Idea Spreader Co. (C. C. A. 6) 231 Fed. 701, 708, 145 C. C. A. 587; Ft. Pitt Co. v. I. & M. Mfg. Co. (C. C. A. 6) supra, 232 Fed. at page 874, 147 C. C. A. 65.[4]

Defendants contend that plaintiff's patent is confined to means for operating the sliding mechanism disclosed.[5] But, passing this contention, and assuming that the narrow claims may involve invention, we are disposed to think, upon a consideration of the entire prior art adduced, that the claims in suit, if construed broadly enough to cover defendants' mechanism, would be void for lack of invention. In reaching this conclusion we have not overlooked the consideration of commercial success. But, while public favor is to be considered where invention is in doubt, yet not only is it not otherwise important (Cincinnati Traction Co. v. Pope [C. C. A. 6] 210 Fed. 443, 449, 127 C. C. A. 175), but in the instant case the record does not show that the commercial success of plaintiff's device is appreciably contributed to by the mechanism of the claims in suit. For all that appears in the record, the success may be due largely, if not entirely, to other features of invention or construction, including the devices of the other patents in suit.

[3] The second patent in suit is No. 646,757, April 3, 1900, to John F. Ohmer. It relates to improvements in multiple fare recorders. As stated in the specification, the improvements in a broad sense "comprise mechanism by means of which printed statements, impressions, or records of the different classifications of fares, of the month and day of the different trips, and of the number of the register may be taken on a single sheet and by a single operation." The invention does not cover the registering mechanism, nor has the patent any relation to the means for operating either the registering or recording

---

[4] It is noticeable that defendants' setting mechanism, viz., the screw shaft carrying a traveling block, embracing an actuator on another shaft, is an old device, found in substance, for example, in the Chamberlain adding machine mechanism patent (No. 582,980).

[5] The specification states that "the present invention comprises means for actuating the slides B separately and at different times to operate the mechanisms of the register"; and, again, "We do not wish to be restricted to the present means shown for moving the carriage or slide, as it is possible to do this by other and different means from those shown and described; but we desire to claim, broadly, a carriage or slide adapted to be moved to positions to engage with the slides of a street car register and means for operating said slide or carriage and for actuating it to move the register slides and also the first and second operating devices for selecting and registering, respectively."

devices. The patent is for a recorder only. The accompanying re-produced Figure 3 of the patent drawings sufficiently shows the re-cording mechanism:

*Fig 3.*

Two series of fare-recording wheels *B, B,* are shown mounted on a transverse shaft *C*—the other banks of wheels having been omitted for convenience. These recording wheels are operated by the gears *A, A,* carried by a shaft above the shaft *C*. Two type wheels, *D* and *E,* representing respectively the month and day of the month are also carried at the extreme right end of the shaft *C,* and are placed in proper printing position by the manual turning of the shafts *c* and *f* through gearing, *h, h*—a pointer on the dial *F* serving to indicate the proper position. At the left of the date wheels is a fixed type in the bar *T*. At the left end of and carried by the shaft *C* is a trip-number printing wheel *k″,* manually set in printing position by the turning of the shaft operating the gear *k* thereon meshing with the gear *k′,* joined to the trip-numbering wheel, this operating shaft carrying a pointer *j* indicating the proper position on the dial. There is also pro-vision for an automatic advancement of the numbering wheel at the end of the trip; but that mechanism is not here important. The classified fare-recording wheels, the two dating wheels (month and day), the fixed type bar indicating the number of the register as well as the trip-numbering wheel, are by one operation brought into print-ing position with the platen in the lower part of the recorder, and the entire record, embracing all the features stated, is by a single impres-sion permanently taken upon a single sheet in the machine.

The claims in suit are Nos. 4, 6, 7, 13 and 14. Claim 4 is printed

in the margin.[6]　Claim 6 adds to the elements contained in claim 4, the fixed bar indicating the number of the register; claim 7 adds to the elements contained in the two previously mentioned claims, the "type wheel denoting the trips." Claim 13 covers the combination in a fare register of the fare-denoting type wheels, the type wheels denoting the trips, the fixed type bar indicating the specific register and impression devices for taking statements from these type wheels and bar. Claim 14 covers the combination in a register of type wheels denoting the total registrations made, the type-numbering wheels, and the impression devices for taking such statement. The defenses prominently urged are lack of invention and noninfringement.

Some of the elements of the combinations of the various claims in suit were old at the time the patent in question was applied for. For example: A similar arrangement of dating wheels to that shown in plaintiff's device had been disclosed by the patent to Murphy (1895) on cash registers; the patent to Carney (1897), also on cash registers; that to Jackson (1897) on time-recording and transfer stamp; and the patent to Grobet (1896) on transfer ticket registers. Each of these patents had day and month wheels, and substantially the setting mechanism therefor employed by plaintiff. It was also old to print the number of the register or car by means of a permanent type bar, in connection with the total of fares taken; as illustrated, for instance, by the patents to Brooks (1876), Sargent and Hirt (1894), and Honiss (1896). Each of the devices mentioned employed a permanent type bar for indicating either the car or register number. But none of them anticipated the combination of either of the claims in suit. Murphy's device, for example, had no groups of type wheels for different classifications of fares; it simply printed upon a cash register ticket its date, its consecutive number, and presumably the amount of the transaction. Carney merely printed the number, dates, and amounts of the various transactions. Jackson printed the day, the month, and the hour. The closest reference so far mentioned is Brooks, whose machine recorded (not on a permanent sheet of paper in the machine, but on a separate ticket) the unclassified trip fares and the register or car number. The Hepton British patent, No. 20,758 (1891), is a closer reference than Brooks, but it falls short of disclosing the invention of the claims in suit. Hepton's register, designed for tram cars and omnibuses, counts the classified fares as taken. On a permanent record, taken at the end of the trip, the totals of the classified fares, together with the trip number, are printed. The device had dating type, inserted by hand in a type frame, and mechanism by which the date and trip number were printed on each ticket given to the

6 4. In a fare recorder, the combination with type wheels assembled in groups each group denoting a definite kind of fare, of type wheels denoting the months and the dates thereof, a dial indicating the months and the dates thereof, mechanism interposed between said date type wheels and dial whereby movement may be imparted simultaneously to said type wheels and dial hand to indicate the same date on both the wheels and dial, and means for taking an impression of the type wheels showing the number of fares collected up to the time of taking such impression, and the date upon which such statement was taken.

passenger; but this mechanism and operation were distinct and separate from those for recording the fares. The patents to Ohmer and Kelch (1899) and to Ohmer, Kelly, and Kelch (1900) contain nothing more significant than the references before mentioned.

We think the patent in suit clearly involves invention. Even if every element of the claims were found in the prior art, invention would still exist if by their combination a new and useful result is obtained, or an old result in a new and materially better way; and that we think has been accomplished by the invention covered by the claims in issue. Ohmer was the first to accomplish the result effected by the device of the patent, by means of which "printed records of the different classifications of fares, of the month and day of the different trips, and of the number of the register may be taken on a single sheet and by a single operation." This result we think a meritorious one, marking a substantial advance in the art, and disclosing invention rather than mere mechanical skill.

[4] We are not impressed with the suggestion that the claims involve mere aggregation. In order to escape aggregation, it is not necessary that all the constituents so enter into the combination as to coact all the time with all the others or change the mode of connection with every other. It is sufficient that the elements so coact that as a consequence of their union a new and useful result, and not a mere aggregation of several results, follows. International Mausoleum Co. v. Sievert, 213 Fed. 225, 229, 129 C. C. A. 569, and cases cited; Houser v. Starr (C. C. A. 6) 206 Fed. 264, 273, 121 C. C. A. 462. We think the recording of the various items of information by a single operation upon one and the same sheet is a unitary result, and not a mere aggregation of results.

We think defendants are shown to infringe claims 4, 6, and 13. Their machine performs the functions of these claims in substantially the same way. The more prominent respects in which defendants' mechanism is said to lack the elements contained in these claims are these: Claims 4 and 6 call for mechanism interposed between the dating type wheels and dial for imparting movement simultaneously to the type wheels and the dial hand. Defendants contend that by this "mechanism" is meant the gear wheels $h$ and $h'$, which defendants do not have, as they employ for operating the different dating wheels a nest of sleeves, so making the gearing of the patent unnecessary; but we think defendants' device is clearly "mechanism" within the terms of the claims. It is not important that this mechanism is old, nor that the dating wheels are not on the same shaft as the other printing wheels. Claims 6 and 13 call for a fixed type bar indicating the specific register. Defendants employ an electroplate for printing the register number. But we think defendants' electroplate and bar the equivalent of the fixed type bar of the patent. They serve the same function and in substantially the same way. Claim 7, however, calls for including in the record "the trip upon which such statement was taken." Counsel seem to agree that the ambiguous language of claim 14 means substantially the same thing. Plaintiff's device prints the trip number each time an impression is taken, viz. at the end of each

trip. Defendants' machine takes two impressions, one at the end of the trip, the other a totalized statement at the end of several trips. Both are permanent records. As we understand the record on appeal, one of defendants' types of machine prints the trip number in the conductor's trip statement; in another type, the trip number does not appear. In neither form of trip statement is the date shown. The specific language of claim 7 is:

"And impression devices for taking a print or impression setting forth a statement of the different fares collected up to the time of taking such statement, the date and the trip upon which such statement was taken."

The question seems to be whether the "impression" called for is limited to the single trip statement. While the question is not free from difficulty, we are disposed to think that the language, "the trip upon which such statement was taken" (differing from the expressions used in claims 4, 6, and 13) means the single trip. If this is so, claim 7 is not infringed by either device, as it calls for an impression of "the date" as well as the "trip," and claim 14 is not infringed by one of defendants' devices because the claim calls for the "trip" number.

[5] The third patent in suit is No. 694,322, February 25, 1902, to John F. Ohmer and others, and relates solely to means for identifying the person taking the statement from the register—the identifying means being a key bearing a distinctive mark, as, for instance, the conductor's number. According to the device of the patent, when the key is out of the machine, the operating parts are held by notches, so that they cannot be operated. The insertion of the key releases the notches, unlocks the printing mechanism, and places the identifying number on the key in alignment with the figures or characters of the fare or other recording wheels, so that the impression of the figures or device upon the identifying key is recorded therewith.

The claims in suit are Nos. 2, 6, and 11. We print claims 2 and 11 in the margin.[7] The only noticeable differences between claims 6 and 2 are that the former provides for taking "printing or impression devices," instead of merely "impression devices" as in the second claim, and in including "mechanism for locking said register * * * under the control of the identification key." It will be noted that claims 2 and 6 expressly call for the placing of the identification mark upon the key *in alignment with the type-wheel,* and that each of the three claims in suit expressly calls for a taking of the impression *of the identification mark upon the key.* Omitting other differences, defend-

---

[7] "2. In a fare register, the combination of type wheels upon which is registered the work of said register, a key bearing an identification mark adapted to be placed in alignment with said type wheels, and impression devices adapted to press one or more sheets against said type wheels and said identification mark on said key, and whereby an impression or print is obtained showing the work of the register and the identification of the person taking such statement."

"11. In a register, the combination of groups of register wheels, means for moving the wheels of each group at each registration, a key bearing a number or other mark of identification, and means for taking impressed or printed statements from said wheels and said key, whereby the work of the register is ascertained, and the person taking each statement is identified therewith."

ants' identifying mechanism differs from that of the patent in this prominent respect: Its key has no identification mark, except as it bears an identifying number or other *device not directly used for printing* purposes. The identification is effected by the use of a numbered key, having on its end notches characteristic of the individual key, which notches engage steps upon a segment wheel, whereby figures (corresponding to the number of the identifying key) upon the peripheries of type wheels are placed in alignment with the other type-recording mechanism of the register. The key is thus not placed in alignment with the type wheels, and no impression is or can be taken of the key or of any identifying mark thereon.

When the patent in suit was applied for (1901), the use of identifying mechanism similar to plaintiff's was old in the workmen's time recorder art. Bundy had ten years before (patent No. 452,894) disclosed a time recorder having a key bearing an identification number, the insertion of which brought the identifying number in alignment with the clock-work operated time mechanism. A turning of the key actuated the printing mechanism, which recorded by the one operation the time (hour and minute) and the employé's identifying number. Bundy's key did not unlock the machine. Heene in 1894 (patent No. 530,340) showed a time-recording device like that of Bundy, so far as any features here involved are concerned. Thurston had in 1899 (patent No. 632,907) shown an identification key of the same nature as Bundy's from which the employé's identification number or mark was printed, in connection with the day and hour of leaving or arriving. In the Thurston device the recorder could not be operated until the key was inserted, and when once inserted and operation of the mechanism begun, the key could not be withdrawn until the operation of the machine was completed. Dallimore in 1900 (patent No. 640,-276) had disclosed a device for registering the quantity of liquids passing from a reservoir, or the number of articles withdrawn from it. His machine was locked from operation when the key was not in place. The key bore an identification mark upon its end, from which an impression was taken upon the same line with the meter record. There was thus disclosed the specific combination of the claims of the patent under consideration, as applied to the time recorder art at least. No application of such mechanism or combination had ever been made to the fare register or recorder art; and it is suggested in the specification of the patent in question that the means employed in the time recorders subserved entirely different purposes from the invention of the patent we are considering, and so does not conflict therewith; and plaintiff so contends in this court. We think this proposition erroneous.

[8] The time recorder art is at least strongly analogous to the fare recorder art; the only substantial difference being that in the one case it is time which is registered and recorded, and in the other fares. The relation of the fare register art to the cash register art is suggested, not only in the first Ohmer patent in suit, but also in the patent now under consideration. And in International Time Recording Co. v. Bundy Recording Co. (C. C. A. 2) 177 Fed. 933, 101 C. C. A. 213,

the time recorder art was held to be analogous to the art of car-mileage indicators. We think the ·disclosures of the time recording art, as related to the fare register art, involves more than mere suggestion. If the application of the time recorder mechanism to the fare recorder art involves more than double use (Houser v. Starr, supra; Weir Frog Co. v. Porter [C. C. A. 6] 206 Fed. 670, 124 C. C. A. 470), it, at the best, involves only slight invention, entitling plaintiff at the most to a narrow range of equivalents. But in the time recorder art identification keys had been used prior to the application for the patent here in question, of substantially the same type and used in substantially the same way as defendants' identifying mechanism, as shown by the patents to English (No. 450,617—1891) and to Emley (No. 788,760), which was applied for previous to plaintiff's patent; and plaintiff insists that the two uses of identification keys are thus mechanical equivalents.

[7] The doctrine of mechanical equivalency requires that the result be accomplished in substantially the same way, and the range of equivalents depends upon the advance made by the inventor in the art. Grand.Rapids Show Case Co. v. Baker (C. C. A. 6) 216 Fed. 341, 354, 355, 132 C. C. A. 485. Defendants' mechanism does not accomplish the desired result in substantially the same way as plaintiff's. No impression is or can be taken from its key. It effects identification only as it sets in operation another and distinct train of mechanism from which the record is taken. Whether or not the two devices would be regarded mechanical equivalents under the broad range permissible in case of a primary patent, the present is not such a case. It is not the case of the substitution of one simple element (as a weight) for another simple element (as a spring). The instant case is broadly distinguished from Bundy Mfg. Co. v. Detroit Time Register Co. (C. C. A. 6) 94 Fed. 524, 537, 36 C. C. A. 375, for two reasons —first, Bundy was the first to accomplish the result of his invention; and, second, the difference in the two mechanisms was merely that in the one the insertion of. the key first unlocked the mechanism and a further push in the same direction operated the recorder, while in the other the first operation was the same and with the same result, the second operation being effected by a mere turn of the key instead of a push.

[8] We are, moreover, disposed to think the inventors intentionally limited themselves to a key from which the impression should be actually taken; and an intentional limitation is none the less effective because unnecessary or self-imposed. McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Cimiotti Co. v. American Co., 198 U. S. 399, 415, 25 Sup. Ct. 697, 49 L. Ed. 1100; Mich. Engine Valve Co. v. Monarch Mfg. Co. (C. C. A. 6) 233 Fed. 107, 110, 147 C. C. A. 177. The inventor is presumed to have been familiar with the prior time recorder art; he mentions the art generally in his specifications. The fact that the latter speaks only of keys "to indicate or print the number or mark of each workman" suggests the confining of his combination to the use of such a key. It is also significant that, while the three claims in suit expressly call for the

taking of the impression directly from the key (two of them in terms call for an alignment of the key itself with the type wheels), others of the claims (as Nos. 7 and 10) make no such limitation; the seventh calling merely for "means for identifying," etc., and the other for "an identification key by means of which the person taking such statement is identified therewith." Claims 7 and 10 are thus broad enough in the respect mentioned to embrace both kinds of keys. The inventor may well have thought defendants' identifying means not highly suitable to the purposes of his invention, and thus deliberately confined himself by the claims in suit. We think the district court rightly held these claims not infringed.

An order will be entered reversing the decree of the district court and remanding the record with directions to enter a new decree, finding the claims of the first patent in suit invalid, if construed as they are by plaintiff and as necessary to be construed if infringement is found; finding the claims of the third patent in suit, as well as claims 7 and 14 of the second patent, not infringed; finding claims 4, 6, and 13 of the second patent valid and infringed; and for the usual decree for injunction as to the last-named claims of the second patent, as well as for accounting with respect to damages and profits from such infringement. Plaintiff will recover one-half its costs in this court.

As it is not shown that the individual defendants have infringed in their individual capacities, either before or after the organization of defendant corporations, or that their action as corporate officers has been of such character as to make them personally liable for infringement by the corporate defendants, the decree for costs will run against the corporate defendants only. Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 Fed. 120, 140, 144 C. C. A. 418.