BURNETT et al. v. VAILE-KIMES CO.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1919.)

No. 3251.

PATENTS &328—INFRINGEMENT—FORCE PUMP.

The Kimes patent, No. 1,166,224, for a motor-operated force pump, claim 7, the distinguishing element of which is the permanently open air ports connecting the suction and discharge chambers, terminating in a "nozzle extending into the upper chamber having its end above the bottom wall thereof," *held* not infringed.

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by the Vaile-Kimes Company against Claude E. Burnett, Everett P. Larsh, and the Burnett-Larsh Manufacturing Company. Decree for complainant, and defendants appeal. Reversed.

Border Bowman and Paul A. Staley, both of Springfield, Ohio, for appellants.

Wm. R. Wood, of Cincinnati, Ohio, for apppellee.

Before KNAPPEN and DENISON, Circuit Judges, and WALTER EVANS, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent No. 1,166,224, issued to plaintiff December 28, 1915, on motor-

operated force pumps for water or other fluid.[1] The features of the device, so far as important here, are sufficiently shown by a reproduction (reduced) of the patent drawing, in which *1* represents the

[1] The bill also embraced a charge of infringement of design patent No. 46,222 to Kimes, August 4, 1914. The District Court held the design patent not infringed. Plaintiff not having appealed, that patent need not be further mentioned.

pump casing, *2* the inlet chamber, *3* the water supply inlet, *10* the pump cylinder mounted in the partition *9*, which separates the inlet chamber from the valve chambers *7* and *8*, *4* the discharge chamber, separated from the valve chambers *7* and *8* by partition *22*, and provided with an air chamber *5* and a water outlet *6*. In this partition *22* are parts *23* and *24*, respectively controlled by valves *25* and *26* located in the discharge chamber. There are permanently open air passages *27* between the valve chambers and the discharge chamber. The patent drawing shows and the specification describes these passages as in the form of nozzles *28*, having their upper ends tapered, mounted in and extending above the partition *22*, "which constitutes the bottom wall of the discharge chamber."

The only claim in issue is No. 7, which reads as follows:

"7. In a pump, a cylinder, a piston mounted in said cylinder, a casing having two chambers arranged one above the other, the lower chamber communicating with said cylinder, the upper chamber communicating with a discharge line, a port connecting said chambers, a valve to control said port, and a nozzle extending into said upper chamber, having its end arranged above the bottom wall thereof and having a permanently open passage connecting said chambers."

Upon hearing on pleadings and proofs, the claim was found valid and infringed. From the interlocutory decree awarding injunction and accounting this appeal is taken.

The case here is in narrow compass. The only feature involved relates to what is called the "priming device," consisting of the permanently open air ports *27* between the valve or suction chamber and the discharge chamber. The functions of these ports are (a) to permit the escape of air from the suction chamber to the discharge chamber, and so on to the air pressure chamber, relieving the valves *25* and *26*, and thereby preventing the pump from becoming air-bound; (b) to form a water seal in the discharge chamber, so that air cannot return to the suction chamber; (c) at the same time permitting return of enough water from the discharge to the suction chamber to keep the valves constantly and automatically primed.

Plaintiff seems to have been the first to employ, at least in pumps of this type and in an operative way, constantly open ports between the suction and discharge chambers for the purpose of relieving the pump from a tendency to become air-bound, although it was old to employ open ports between the discharge chamber and the pump cylinders for the purpose of drainage and thus to prevent freezing, and other more or less related uses of similar ports in pumps of different kinds are shown. Plaintiff's permanently open ports through the partition between the suction and discharge chambers are shown to be highly useful, effective, and well-received, and, were the device of the patent plaintiff's first use of such ports in this kind of pumps, the problem before us would be very different.

But that is not the case. The patent in suit was applied for February 25, 1915. More than two years before that date there were in public use and on sale pumps manufactured and sold by plaintiff of

the general type of tho'se involved here, which were provided with constantly open air ports between the suction and discharge chambers, in the form of lateral perforations in the rim of the discharge valve seat, and thus below the valve and above the floor of the discharge chamber. This construction is identified in the record as the "Stebleton." It is clearly a prior use of the ports there employed. Each of the first six of the eight claims of the patent contains the element "a permanently open port connecting the upper portion of said [suction] chamber with said discharge line," in the foregoing or substantially similar language; but each of them wholly omits the element of "a nozzle extending into said upper chamber, having its end arranged above the bottom wall thereof," or anything of that substance. Each of the six claims thus in terms reads upon the Stebleton structure, and the District Court dismissed the bill as to those six claims.[2] Plaintiff concedes that the eighth claim does not cover that construction; the eighth differing from the seventh principally in describing the nozzle as "having its upper end tapered" and in omitting the phrase "having its end arranged above the bottom wall thereof," although that feature is perhaps implied.

The only question thus relates to the validity and infringement of claim 7, as differentiated from the first six claims. Assuming that claim 7 is valid, we are unable to agree with the learned District Judge that defendant's structure infringes it. That by the language "a nozzle extending into said upper chamber, having its end arranged above the bottom wall thereof," the inventor intended to describe an element not in fact contained in the Stebleton construction is we think clearly apparent, not only from the language of the claim itself and by the omission of that element from each of the six preceding claims, but from the description of the "nozzles" contained in the specification, a quotation from which we print in the margin.[3]

It is unnecessary to invoke the dictionary definition of "nozzle." The description of the ports as "formed in nozzles * * * mounted in the partition," and having "their upper ends extending above said partition" naturally points to a mechanical construction protruding into the discharge chamber and terminating above its floor. The

---

[2] Plaintiff's counsel say in brief that "the first six claims were not drawn to closely and structurally differentiate from the abandoned Stebleton device, i. e., the horizontal duct in the valve seat, and so were dropped from the infringement issues.".

[3] "While a simple opening in the partition is all that is necessary to constitute the relief port, such an opening is more or less liable to stoppage, and, I have in the present construction shown the relief ports 27 as formed in nozzles 28 which are mounted in the partition 22, and have their upper ends extending above said partition, which constitutes the bottom wall of the discharge chamber, and which also have their upper ends tapered. Thus any foreign matter which enters the relief ports must pass directly into the same, as the nozzle affords no support upon which such material may be deposited and may then work its way into the opening. To further prevent clogging it is desirable that the relief port should be as short as it is possible to make it, and I have, therefore, provided the body portions of the nozzles 28 with enlarged bores 29 into which the relief ports open."

reference to the tapering of the upper ends of the nozzles for the purpose of preventing deposit thereon of material which would tend to clog the opening makes such construction conclusive. We think it clear that plaintiff has intentionally and effectively limited claim 7 to such construction. McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Cimiotti v. American Co., 198 U. S. 399, 415, 25 Sup. Ct. 697, 49 L. Ed. 1100; Ohmer v. Ohmer (C. C. A. 6) 238 Fed. 182, 193, 151 C. C. A. 258. In fact, the patent drawing above reproduced discloses a mechanical construction extending above the floor of the discharge chamber, and plaintiff's commercial construction has brass nozzles with tapered ends driven through the floor openings and terminating a substantial distance above the floor.

In defendant's pump (which is manufactured under its patent No. 1,242,104, October 2, 1917, and thus later than the patent in suit) the air ports between the suction and discharge chambers take the form of a vertical perforation in the valve stem (thus leading from the suction chamber), connecting near the upper end of the stem with a transverse perforation therein opening into the discharge chamber. These perforations are unlined, and there is neither "nozzle" nor mechanical construction of any kind "extending into" the upper chamber, or "having its end arranged above the bottom wall thereof," unless the mere perforation in the valve stem is such construction, as we think it plainly is not. The advance over Stebleton made by claim 7 is not great, and relates only to the protruding "nozzle" construction. Plaintiff is entitled to but a narrow range of equivalents —a range which cannot reasonably be made to include defendant. If the latter's ports constitute a protruding "nozzle," so also does Stebleton. If, as plaintiff's counsel contend, "the Stebleton valve seat does not extend into the upper chamber, but is a mere window between the upper chamber and the interior of the valve port," the same is in essence true of defendant's port. The subjoined cut shows the form and location of each of the three devices we are considering.

As readily seen, those of Stebleton and of defendant are within the valve structure, that of plaintiff entirely outside of it. The nozzleless open port of the Stebleton pump cannot be considered merely an abandoned experiment in the sense of the patent law, notwithstanding the stipulation that "plaintiff stopped using, or abandoned the specific construction of the Stebleton exhibit within the two years preceding the application for the patent." [4] The open ports would appear to have been fairly operative and were used in the pumps of plaintiff's manufacture (and even inserted in pumps previously sold, when trouble was had with the suction) for a considerable time, and until the adoption of the improved and superior device of claims 7 and 8.

The conclusion of noninfringement is not weakened by the fact that the specification of defendant's patent states that "vertically opening ports * * * for instance in the deck 8 between the chambers or in some instances in the rim of the discharge valve seat" (apparently referring to Stebleton) have been found objectionable as "quite likely to collect sediment and deposit particularly when adjacent to the bottom of the discharge chamber," and that in defendant's device such difficulties are overcome by locating the port in a "substantially horizontal position * * * elevated above the bottom of the chamber," nor by the fact that defendant's device aims to prevent clogging of the air ports by an asserted wiping action of the valve in its up and down movement on the stem over the air port opening therein.

The question is not whether defendant has infringed Stebleton, nor whether defendant's construction is an improvement over the invention of claim 7 of plaintiff's patent. The only question is: Does it employ the device of that claim? Herman v. Youngstown Co. (C. C. A. 6) 191 Fed. 579, 585, 112 C. C. A. 185. As we have already said, we think it does not. We therefore find it unnecessary to discuss the charge of unfair competition, which does not affect the purely legal question of infringement or noninfringement.

The decree of the District Court is reversed, so far as it finds infringement of, and awards relief respecting, claim 7, and the record is remanded to that court, with directions to enter a new decree not inconsistent with this opinion.

---

[4] It was formally stipulated upon the hearing below that "the Stebleton pump, with a horizontal orifice through the valve seat rim, was in public use and on sale more than two years prior to February 23, 1915, which is the filing date of the application for that patent."